Fifth Circuit

SILAS TOPLIFF *vs.* ALBERT L. VAIL and others.

Topliff.
*vs.*
Vail.

As between bona fide creditors of a previous firm and the separate creditors of a partner who continued the business and was the sole visible owner of the property, employed in trade, and where the separate creditors had given credit, relying on the property employed in trade for payment, such creditors should be preferred to the creditors of the previous firm.

The creditors of a partnership have a right to payment out of the partnership effects in preference to the creditors of an individual partner.

In the absence of any agreement to the contrary, it is fair to presume that a retiring partner does not intend that the partnership property shall be used for the individual benefit of a partner who continues the business, leaving the debts in the firm unpaid; and this was held to be the presumption where the retiring partner transferred the partnership effects to a partner continuing the business, who agreed to pay the partnership debts and gave bond to that effect.

The bill in this case states that the complainant, and defendant Albert L. Vail, being copartners June 25, 1840, dissolved. That the complainant sold out his interest in the copartnership property to said Vail, and received from Vail his pay therefor, and that Vail at the same time executed to the complainant a bond in the penal sum of $5,000, conditioned that said Vail should pay all the partnership debts. Alleges that Vail has since fraudulently transferred the partnership effects for the purpose of preventing their application to the payment of the partnership debts; that Vail had absconded, &c. Bill prays that the partnership property be applied to the payment of the partnership debts for which the complainant is liable.

Upon this showing an injunction was granted, and the defendants moved to dissolve the injunction for want of equity in the bill.

R. MANNING, In support of the motion,

The sale changed the copartnership property into the individual property of Vail. It was no longer the property of the copartnership, but the property of Vail who had purchased out the interest of his copartner. *Exparte Ruffin* 6 *Ves.* 119. *Exparte Fell* 10 *Ves.* 347. *Exparte Williams*, 11 *Ves.* 3.

This is a case of one copartner selling his interest in the firm to another who is to continue the business on his own account. It is not a dissolution of the copartnership and a placing of its effects in the hands of one of the copartners to pay the debts and wind up the

business ; when that is the case, the ownership of the property is

not changed, but what was copartnership property at the dissolution continues to be such until it is used to pay the debts or a division of it is made. The individual left in possession of it holds it in trust for that purpose. The case of *Deveau* vs. *Fowler*, 2 *Paige* 400, is a case of this description. On no other principle can it be reconciled with the cases in Vesey. The cases we have cited were not decided by Lord Eldon on any principle of law peculiar to the Bankrupt law of England.

The facts in the case of *Deveau vs. Fowler* are not fully stated by the reporter. It appears from the case that "on dissolution of the copartnership it was agreed that the defendant should take all the stock and effects, and pay off all the debts due by the firm, and indemnify the complainant against the same." ; It does not appear in that case as in this, that the complainant received any thing for his interest in the copartnership effects, or that he took a bond from the defendant for the payment of the copartnership debts, or that the copartnership property was left with the defendant with a view to his continuance of the business. The only inference to be drawn from the case is, it would seem, that the defendant was to pay the debts with the *copartnership effects*, which were to be used for that purpose and no other. This appears to have been the light in which Chancellor Walworth viewed the facts in that case, for he says :— "The fair presumption in the absence of any express agreement to the contrary, therefore, is, that it was not the intention of the complainant that the effects assigned to the defendant should be appropriated to the private use of the latter, leaving the debts of the firm unpaid."

"See also *Collyer on Partnership* 91 ; *Id* 504 *to* 509.

BAKER & MILLARD contra.

It is alleged as the ground of this motion, that the sale by Topliff to Vail converted the partnership property into individual property, and that thereafter the complainant had no lien or equity to demand that the property should be appropriated to the payment of partnership debts.

We think it clear that such was not the effect of the transaction.

The bill states he sold and assigned the partnership effects. But this was upon the agreement of Vail to pay the debts of the partnership. This was an entire transaction.

Vail was to take the property and pay the debts, and any surplus that might remain was to belong to him.

Topliff received no security for the payment of the debts, and his indemnity against them, except the agreement and individual responsibility of Vail, which agreement was a *condition of the sale.* All that Vail would be entitled to under this arrangement would be the surplus after paying the debts of the firm.

The cases cited in support of the motion *Exparte Ruffin, Exparte Fell, Exparte Williams, &c.*, are none of them like this. They are all *Bankruptcy cases*, where the question arose not between the partners, but between the joint creditors of the partners, and the separate creditors of the Bankrupt partner. In Ruffin's case (and all the others are similar) one of the partners sold out to the other and retired from the business—the latter agreeing to pay the debts, &c. The purchasing partner continued the trade for a year and a half, and then became bankrupt. The joint creditors presented a petition praying that the partnership effects remaining in specie might be appropriated to the payment of the partnership debts in preference to the separate creditors of the bankrupt. As between them the question was materially different from the question between the parties to this suit.

In the first place there was no pretence of *fraud* or bad faith in that case, in any quarter; whereas fraud and bad faith on the part of the defendants in the suit, form the very foundation of this suit.

It is admitted by counsel against the petition in Ruffin's case, that fraud would vitiate all transactions of this kind; but his claim was placed on the ground that there was no fraud in the case. And also on the ground that to admit the claim of the petitioners and to give the joint creditors a lien on the property after a sale, and after the trade had been continued *for years* by the purchasing partner (and in that case it had been with the knowledge of the joint creditors,) would operate unjustly and as a fraud upon the separate creditors of that partner, who were presumed to have given credit to him upon

the *faith of what they saw as separate property;* the purchasing partner being the *visible owner.* In this case there are no seperate creditors, and therefore no such equities exist.

The decisions in the cases cited all evidently turn upon the construction given to a certain provision in the Bankrupt *Act* 21 *James* 1, *ch* 19, *sec* 10 *and* 11, by which all the property which remains in the possession, order and disposition of the bankrupt at the time of the bankruptcy, is made to pass by the assignment to the assignee. See *Jones vs. Gibbons,* 9 *Vesey* 407. See also the case of *Shakeshaft & al.* cited by Mr. Mansfield in Ruffin's case, in which Lord Thurlow said that he could not take accounts between the respective partners, but finding the effects *in the hands* of one, *whatever might be the demands of the others,* or the consequence to the joint creditors, the goods were the separate property of that one and must be applied to his separate debts. In that case the bankrupt partner happened *by accident* to have the property in his hands—there had been no purchase or payment by him. So far was the provision in the bankrupt act referred to, held to extend.

But even in the case of Ruffin, notwithstanding it was a bankruptcy case, and notwithstanding this statute, the Lord Chancellor does not express a decided opinion. He denies the relief sought on the petition, *because it was a matter of doubt,* whether they were entitled to it, and therefore that it wonld be better to leave the parties *to file a bill.*

*Ex-parte Fell,* 10 *Vesey* 347, differs but little from Ruffin's case, except that the retiring partner received *security* for his indemnity, and for the payment of the debts, besides the agreement and individual responsibility of the remaining partner. His equities upon the property would therefore be less strong than in Ruffin's case.

But another thing that renders those cases unlike the present, is that the petitioners were the *creditors* of the partnership, and they had *another remedy,* for the selling partners were solvent, and they could collect their debts of them.

We rely on the case of *Deveau vs. Fowler,* 2 *Paige* 400, and on the case of *Smith vs Haviland & Field there cited..* These cases are precisely in point, and the former is *identical* with this in almost all its circumstances, so far as this branch of the case is concerned.

The great difference between this case and also the one in Paige and the cases in Vesey &c., is that in the latter the question was between bona fide creditors, and the rights of bona fide holders of property were to be affected ; whereas in these no such rights are to be affected so far as appears upon the bill, and the suit is against a partner fraudulently seeking to smuggle the property and to appropriate it, not to pay his *separate creditors*, but to *his own use*, and against others fraudulently conniving with and aiding him in this object. The equities therefore in the two classes of cases, without reference to the provisions of the bankrupt act, are widely different.

It was urged by the counsel in support of the motion, that the facts were not fully stated in the Deveau case. But of this there is no evidence. It was said that it was unlike this case because it does not appear that the vendor received any thing for his interest. But this is immaterial ; he received a covenant of indemnity against the debts, and this would be a sufficient consideration for the transfer and sale, whether there was any thing paid or not.

It was also said that no reference was made either by counsel or the court in the Deveau case to the cases in Vesey, and from this an inference was drawn that the facts were dissimilar. But this circumstance is susceptible of a much more satisfactory explanation. There are much *later cases* than those in Vesey, in the English Reports, entirely similar, and in which the same decision had been made ; and to these *later cases* reference *was* made by the court. What cases were cited by counsel does not appear.

But there is another branch of this case left out of view by the counsel for the motion. The equity of the bill does not rest alone in the equitable lien of the complainant as a *partner* on the *partnership property*. It rests also upon the liability of the complainant to pay the debts, upon the fact that the defendant, Albert L. Vail, is legally and equitably bound to the complainant to pay them and save him harmless, upon the *fraud* of Vail in assigning and disposing of his property and himself absconding, so as to *deprive the complainant of all remedy at law*.

Certainly these peculiar circumstances would give a court of equity, jurisdiction of the case, and would entitle the complainant to come into court and obtain a discovery and relief, even though there were

none of the partnership property left, or though there had been no
partnership. He would be entitled to come in and file his bill for
the purpose of setting aside this fraudulent conveyance, and obtain
an injunction against removing or disposing of the property—partic-
ularly as both the assignor and assignee are out of the jurisdiction of
any court of law of this State.

The Chancellor.—I can see no well founded distinction between
this case and the case of *Deveau* vs. *Fowler*, 2 *Paige* 400.

The cases cited from Vesey, I am inclined to think stand on a dif-
ferent ground.

As a question between *bona fide* creditors of a previous firm and
the separate creditors of a partner who continued the business, and
was the sole visible owner of the property employed in the trade, I
should concur in the view that where the separate creditors had given
credit relying upon the property employed in the trade for payment,
they should be preferred to the creditors of the previous firm. But
no such question arises here as the case now stands. The whole
transaction is alleged to be fraudulent.

That the remaining property of this firm has been fraudulently
transferred, and without consideration to prevent its application to
the payment of the partnership debts ; and this for the purpose of
this motion must be considered as admitted.

The creditors of a partnership have a right to payment out of the
partnership effects ; in preference to the creditors of an individual
partner.

In Deveau *vs.* Fowler, the partnership effects were transferred to
the partner continuing the trade, and he agreed to pay the partner-
ship debts, and that is this case. The circumstance of taking the
individual bond or guarantee of this partner does not vary the case.

I think the Chancellor was right in the last mentioned case, in say-
ing, that in the absence of any agreement to the contrary, it is the
fair presumption that the retiring partner did not intend that this pro-
perty should be used for his individual purpose, leaving the debts of
the firm unpaid. This case as it now stands is stronger than the case
of Deveau *vs.* Fowler.

Here it is alleged that Vail has fraudulently transferred the assign-

First Circuit ed effects for the purpose of preventing their application to the payment of the partnership debts, and that he has absconded.

Topliff
vs.
Vail.

The complainant does not ask that the partnership property shall be reconveyed to him, but applied to the payment of the partnership debts, for which he is liable. If the goods were in the hands of a *bona fide* purchaser, it would present a very different case.

Motion denied.